**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| iMOVE CHICAGO, INC., individually, and on behalf of all others similarly situated, | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 1:16-cv-10106 |
| INLAND BANCORP, INC., INLAND HOME MORTGAGE COMPANY, LLC, INLAND BANK AND TRUST, and GIL KERKBASHIAN, | ) | |
| Defendants. | ) | Jury Trial Demanded |

# CORRECTED AMENDED CLASS ACTION COMPLAINT

## INTRODUCTION

1. Plaintiff iMOVE CHICAGO, INC. ("iMove" or "Plaintiff"), brings this action to secure redress for the actions of Defendants INLAND BANCORP, INC., ("Inland Bancorp."), INLAND HOME MORTGAGE COMPANY, LLC ("Inland Home Mortgage"), INLAND BANK AND TRUST ("Inland Trust"), and GIL KERKBASHIAN ("Kerkbashian") (collectively, "Defendants"), for sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227, the Illinois Consumer Fraud and Deceptive Trade Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, and conversion.

2. The TCPA expressly prohibits unsolicited facsimile ("fax") advertising. Unsolicited fax advertising damages the recipients. The recipient is deprived of its paper and ink or toner and the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited faxes prevent fax machines from receiving and sending

authorized faxes, cause wear and tear on fax machines, and require labor to attempt to identify the source and purpose of the unsolicited faxes.

## PARTIES

3. Plaintiff iMove is an Illinois corporation headquartered in Chicago, Illinois.

4. Defendant Inland Bancorp is a Maryland corporation headquartered in Illinois at 2901 Butterfield Road, Oak Brook, Illinois. At all relevant times, Inland Bancorp was operating as a bank holding company for Inland Trust.

5. Defendant Inland Home Mortgage is an Illinois corporation with its headquarters located at 2901 Butterfield Road, Oak Brook, Illinois.

6. Defendant Inland Trust is an Illinois bank located at 2805 Butterfield Road, Oak Brook, Illinois.

7. On information and belief, Defendant Gil Kerkbashian is a resident and citizen of Illinois.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).

9. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10. The Court has personal jurisdiction over Defendants because Inland Trust and Inland Home Mortgage are businesses organized under the rules of Illinois, Inland Bancorp is headquartered and does business in Illinois, and, upon information and belief, Kerkbashian is a resident and citizen of Illinois.

11. Venue in this District is proper because a substantial portion of the events occurred in the District, Defendants transact business in the District, and Inland Trust and Inland Home Mortgage are located in the District.

## FACTS

12. On August 24, 2016, Plaintiff received an unsolicited fax advertisement (attached hereto as Exhibit A) from Defendants on its fax machine.

13. On September 14, 2016, Plaintiff received a second unsolicited fax advertisement (attached hereto as Exhibit B) from Defendants on its fax machine.

14. Both fax messages contained advertisements for Defendants' products and services.

15. Additionally, both fax messages contained multiple telephone numbers and an email address registered to Defendants.

16. Kerkbashian's name, photograph, telephone number, and email address were contained in both faxes.

17. Under the doctrine of *respondeat superior*, Inland Bancorp, Inland Trust, and Inland Home Mortgage are responsible for Kerkbashian's conduct on behalf of Inland Bancorp, Inland Trust, and Inland Home Mortgage.

18. The TCPA and FCC rules require that unsolicited fax advertisements must include both a telephone number and a fax number for recipients to transmit a request to the sender not to send any additional unsolicited fax advertisements. 47 U.S.C. § 227(b)(2)(D); 47 CFR § 64.1200(a)(4)(iii)(D).

19. However, neither fax message sent to Plaintiff included a fax number that would allow recipients of the fax message to send a fax message requesting that they not receive any

further unsolicited fax advertisements. The "fax opt out number" listed on both fax messages is a telephone number and cannot accept fax messages.

20. Plaintiff had no relationship with Defendants prior to receiving the unsolicited fax advertisements, and had not authorized, requested, or consented to allow Defendants to send it fax advertisements.

21. Plaintiff's telephone and fax number were not registered or subscribed to receive any form of advertising from any solicitor or soliciting services at the time Plaintiff received Defendants' fax solicitations.

22. On information and belief, both fax messages attached hereto were sent as part of a mass broadcasting of faxes.

23. On information and belief, Defendants have transmitted similar unsolicited fax advertisements to more than 40 persons and businesses in Illinois.

24. At all relevant times, there was no reasonable means for Plaintiff or other recipients of Defendants' unsolicited advertising faxes to avoid receiving these illegal faxes. Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

## CLASS ALLEGATIONS

25. Plaintiff brings this action pursuant to Fed. R. Civ. P. Rule 23 on behalf of similarly situated individuals and entities ("Class") defined as follows:

> All persons with Illinois fax numbers who were sent facsimile messages by or on behalf of Defendants promoting Defendants' goods or services, since September 30, 2012.

Excluded from the Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had their

claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

26. Fed. R. Civ. P. Rule 23(a) provides that four prerequisites must be satisfied for a class to be certified: (1) that the proposed Class is so numerous that joinder of all members is impracticable; (2) that there are questions of law or fact common to the Class; (3) that the claims of the representative party are typical of the claims of the Class; and (4) that the representative party will fairly and adequately protect the interests of the Class. Fed. R. Civ. P. 23(a). Additionally, to be entitled to class certification, one of the subsections of Fed. R. Civ. P. Rule 23(b) must be satisfied.

27. **Numerosity**: The members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Class is comprised of more than 40 members. The exact number of Class members is presently unknown and can only be ascertained through discovery. Class members can be easily identified through Defendants' records or by other means.

28. **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class, including, but not limited to:

a. Whether Defendants engaged in a pattern of sending unsolicited fax advertisements to Plaintiff and Class members;

b. Whether Defendants' transmission of the unsolicited fax messages violated the TCPA;

c. Whether Plaintiff and Class members are entitled to treble damages based on the willfulness of Defendants' conduct;

d. Whether Defendants engaged in unfair or unlawful acts and practices, in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"); and

e. Whether Defendants converted Plaintiff's and Class members' property.

29. **Typicality**: Plaintiff's claims are typical of the claims of the proposed Class. All claims are based on the same legal and factual issues. Plaintiff and each of the Class members received an unsolicited fax advertisement from Defendants during the time period relevant to this action.

30. **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in handling class actions and claims involving unlawful business practices. Plaintiff has no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

31. **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. The trial and the litigation of Plaintiff's claims are manageable.

32. Numerous courts have certified class actions under the TCPA. *See, e.g.*, *Travel 100 Group, Inc. v. Empire Cooler Service, Inc.*, 03 CH 14510 (Cook Co. Cir. Ct., Oct. 19, 2004); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. 94 (Ariz. App. 2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind. App. 2003); *Hooters of Augusta, Inc. v. Nicholson*, 245 Ga.App. 363 (Ga. App. 2000) (private class actions); *State of Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892 (W.D. Tex. 2001) (state enforcement action).

33. Further, under Fed. R. Civ. P. Rule 23(a), Defendants have acted on grounds generally applicable to the proposed Class, making appropriate final injunctive relief with respect to the proposed Class as a whole.

**COUNT I**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227)**

34. Plaintiff repeats and re-alleges paragraphs 1-33, with the same force and effect as though fully set forth herein.

35. At all relevant times, the TCPA was in full force and effect.

36. The TCPA prohibits "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine. . . ." 47 U.S.C. §227(b)(l)(C).

37. The TCPA provides for a private right of action, as follows:

> A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State —
>
> > (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
> >
> > (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or
> >
> > (C) both such actions.
>
> If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.

47 U.S.C. §227(b)(3)

38. Plaintiff and Class members did not give prior consent for Defendants to send them unsolicited fax advertisements and Plaintiff and Class members did not have an established business relationship with Defendants.

39. Plaintiff and Class members received unsolicited fax messages from Defendants in violation of the TCPA. The fax messages that Plaintiff and Class members received were advertisements for goods or services offered by Defendants.

40. Further, Defendants willfully and knowingly violated the TCPA, as evidenced by Defendants' repeated violation of the TCPA by sending multiple unsolicited fax advertisements to Plaintiff and Class members.

41. As a direct and proximate result of the foregoing, Plaintiff and each Class member suffered damages when they received the unsolicited faxes, in the form of paper and ink or toner consumed as a result. Furthermore, Plaintiff's and Class members' statutory right of privacy was invaded.

42. Neither unsolicited fax advertisement sent to Plaintiff and Class members included a fax number that would allow recipients to send a request to not receive any further fax advertisements.

43. Plaintiff and Class members are entitled to statutory damages.

44. Defendants should be enjoined from sending further advertising faxes to Plaintiff and any person with whom Defendants do not have an established relationship or who has not requested Defendants' advertising to be sent via fax.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff iMOVE CHICAGO, INC., individually, and on behalf of the Class, prays for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action, and certifying the Class defined herein;

b. Designating Plaintiff as the representative of the Class and its undersigned counsel as Class Counsel;

c. Entering judgment in favor of Plaintiff and the Class and against Defendants, jointly and severally;

d. Awarding Plaintiff and the Class actual damages, statutory damages, and treble damages;

e. Awarding Plaintiff and the Class attorneys' fees and costs, including interest thereon, as allowed or required by law;

f. Enjoining Defendants form any further transmission of unsolicited fax advertisements; and

g. Granting all such further and other relief as the Court deems just and appropriate.

**COUNT II**
**Violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act**
**(815 ILCS 505/1, *et seq.*)**

45. Plaintiff repeats and re-alleges paragraphs 1-33, with the same force and effect as though fully set forth herein.

46. At all relevant times, the ICFA was in full force and effect.

47. The ICFA prohibits, *inter alia*, using unfair or unlawful business acts or practices. 815 ILCS 505/2.

48. Defendants engaged in unfair and unlawful acts and practices by sending unsolicited fax advertisements to Plaintiff and Class members.

49. Unsolicited fax advertising violates both the TCPA and Illinois law. Illinois statute 720 ILCS 5/26-3(b) makes it a petty offense to transmit unsolicited fax advertisements to Illinois residents.

50. Defendants engaged in an unfair practice by engaging in conduct that is contrary to public policy, unscrupulous, and caused injury to recipients of their advertising.

51. Defendants' conduct caused recipients of their advertising to bear the cost of Defendants' advertisements. This gave Defendants an unfair competitive advantage over

businesses that advertise lawfully, such as by direct mail. For example, an advertising campaign targeting one million recipients would cost $500,000 if sent by U.S. mail but only $20,000 if done by fax broadcasting. The reason is that instead of spending $480,000 on printing and mailing the ad, the fax broadcaster misappropriates the recipients paper and ink. "Receiving a junk fax is like getting junk mail with the postage due." Remarks of Cong. Edward Markey, 135 Cong Rec E 2549, Tuesday, July 18, 1989, 101st Cong. lst Sess.

52. Defendants' shifting of advertising costs to Plaintiff and the Class members in this manner makes such practice unfair. In addition, Defendants' conduct was contrary to public policy, as established by the TCPA and Illinois statutory and common law.

53. As a direct and proximate result of the foregoing, Plaintiff and each Class member suffered damages as a result of receipt of the unsolicited faxes, including the paper and ink or toner consumed as a result, as well as the violation of their statutory right to privacy.

54. Defendants engaged the foregoing conduct in the course of trade and commerce.

55. Defendants should be enjoined from sending further advertising faxes to Plaintiff and any person with whom Defendants do not have an established relationship or who has not requested Defendants' advertising to be sent via fax.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff iMOVE CHICAGO, INC., individually, and on behalf of the Class, prays for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action, and certifying the Class defined herein;

b. Designating Plaintiff as the representative of the Class and its undersigned counsel as Class Counsel;

c. Entering judgment in favor of Plaintiff and the Class and against Defendants, jointly and severally;

d. Awarding Plaintiff and the Class damages equal to the amount of actual damages that they sustained, plus punitive damages;

e. Awarding Plaintiff and the Class attorneys' fees and costs, including interest thereon, as allowed or required by law;

f. Enjoining Defendants from any further transmission of unsolicited fax advertisements; and

g. Granting all such further and other relief as the Court deems just and appropriate.

**COUNT III**
**Conversion**

56. Plaintiff repeats and re-alleges paragraphs 1-33, as though fully set forth herein.

57. By sending Plaintiff and Class members unsolicited faxes, Defendants converted to their own use ink or toner and paper belonging to Plaintiff and the Class members.

58. Immediately prior to the sending of the unsolicited faxes, Plaintiff and Class members owned and had an unqualified and immediate right to the possession of the paper and ink or toner used to print the faxes.

59. By sending the unsolicited faxes, Defendants appropriated to their own use the paper and ink or toner used to print the faxes and used them in such manner as to make them unusable. Such appropriation was wrongful and without authorization.

60. Defendants knew or should have known that such appropriation of the paper and ink or toner was wrongful and without authorization.

61. As a direct and proximate result of Defendants' conduct, Plaintiff and Class members suffered damages as Plaintiff and Class members were deprived of the paper and ink or toner, which could no longer be used for any other purpose.

62. Defendants should be enjoined from sending further advertising faxes to Plaintiff and any person with whom Defendants do not have an established relationship or who has not requested Defendants' advertising to be sent via fax.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff iMOVE CHICAGO, INC., individually, and on behalf of the Class, prays for an Order as follows:

a. Finding that this action satisfies the prerequisites for maintenance as a class action, and certifying the Class defined herein;

b. Designating Plaintiff as the representative of the Class and its undersigned counsel as Class Counsel;

c. Entering judgment in favor of Plaintiff and the Class and against Defendants, jointly and severally;

d. Awarding Plaintiff and the Class damages equal to the amount of actual damages that they sustained;

e. Awarding Plaintiff and the Class attorneys' fees and costs, including interest thereon, as allowed or required by law;

f. Enjoining Defendants from any further transmission of unsolicited fax advertisements; and

g. Granting all such further and other relief as the Court deems just and appropriate.

**JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action so triable.

IMOVE CHICAGO, INC. individually, and on behalf of all others similarly situated,

By: /s/ Thomas A. Zimmerman, Jr.

Thomas A. Zimmerman, Jr. (IL #6231944)
*tom@attorneyzim.com*
Amelia S. Newton (IL #6190594)
*amy@attorneyzim.com*

Nickolas J. Hagman (IL #6317689)
*nick@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com

Counsel for the Plaintiff and Class

# DAVID AND GOLIATH. SELF EMPLOYED VS CORPORATE.

I NOW HAVE A PROGRAM THAT SERVES THE FORGOTTEN SELF EMPLOYED BUSINESS PERSON. THE SELF EMPLOYED UNDERDOG THAT BUILDS THEIR BUSINESS DAY IN AND DAY OUT WITHOUT A REGULAR PAYCHECK. AS A SELF EMPLOYED PERSON MYSELF I KNOW WHAT ITS LIKE BEING SELF EMPLOYED, BEING AN UNDERDOG AND COMPETING AGAINST BIG BANKS WITH THEIR ENDLESS RESOURCES. WHEN WILL THE MORTGAGE MARKET INTRODUCE BETTER LENDING SOLUTIONS FOR US?

## FINALLY A STEP IN THE RIGHT DIRECTION...

*Gil Kerbashian's*

Solutions for Self Employed Homebuyers

Often times, due to write-offs, tax returns won't always show an accurate cash flow. If you have a homebuyer experiencing this situation, I have the solution. I've introduced a 15% downpayment loan for self employed homebuyers with strong credit but that can't provide tax returns due to write-offs...

**NO TAX RETURN PROGRAM. I QUALIFY SELF EMPLOYED FOLKS WITH 12-24 MOS BANK STATEMENTS**





Gil Kerkbashian
(847) 873-7295
gil@inlandbank.com
Mortgage Lending Since 1997
Senior Loan Originator
NMLS 197757 031.0034768
Inland Home Mortgage

Lake Zurich, Countryside, Geneva, Oak Brook, Elmhurst, Glen Ellyn, Lombard, Villa Park, Morton Grove, Hawthorn Woods. Corp: 2225 S Wolf Rd. Hillside IL 60162 (877) 838-4462 NMLS 221663




Fax opt out number: (855) 477-3374

**EXHIBIT A**



# Who Doesn't Love Piggybacks?

A piggyback mortgage is a second mortgage or home equity loan that closes at the same time as the first mortgage. Homeowners sometimes use a piggyback mortgage to lower the loan-to-value ratio of the first loan, enabling them to avoid paying private mortgage insurance.

***What else can you do with one of our second mortgages?:***

•Pull equity from your current home to buy another property.
•Pay down debt and realign debt to income ratios for a future purchase.
•Move from a Jumbo loan to a Conforming loan to avoid Jumbo guidelines.
•Use the HELOC to reduce downpayment so you can use savings to upgrade the home.
•Pay off high interest debt and improve cash flow.

Opt out of fax updates: 1-855-477-3374



Gil Kerkbashian
(847) 873-7295
gil@inlandbank.com
Mortgage Lending Since 1997
Senior Loan Originator
NMLS 197757 031 0034768
Inland Home Mortgage









Lake Zurich, Countryside, Geneva, Oak Brook, Elmhurst, Glen Ellyn, Lombard, Villa Park, Morton Grove, Hawthorn Woods Corp: 2225 S Wolf Rd. Hillside IL 60162 (877) 838-4462 NMLS221669

**EXHIBIT B**

**PROOF OF SERVICE**

Nickolas J. Hagman, an attorney, hereby certifies that he caused the above and foregoing *Corrected Amended Class Action Complaint* to be served upon counsel of record in this case via the U.S. District Court CM/ECF System, on this day February 8, 2017.

s/ Nickolas J. Hagman